IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FT. PIERCE DIVISION

OFFICE OF THE ATTORNEY GENERAL,
STATE OF FLORIDA, DEPARTMENT OF
LEGAL AFFAIRS,

CASE NO:  2:26-cv-14238-AMC

      Plaintiff,

v.

OPENAI GLOBAL, LLC; OPENAI
FOUNDATION (F/K/A OpenAI, Inc.);
OPENAI OPCO, LLC; OPENAI GROUP
PBC; OPENAI HOLDINGS, LLC; and
SAM ALTMAN,

      Defendants.

_____/

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO REMAND**

Defendant OpenAI Group PBC; Defendant OpenAI Foundation; Defendant OpenAI OpCo, LLC; Defendant OpenAI Holdings, LLC; Defendant OpenAI Global, LLC; and Defendant Sam Altman[1] (collectively, "OpenAI"), hereby respond in opposition to Plaintiff Office of the Attorney General for the State of Florida's ("Plaintiff") Motion to Remand, [ECF No. 12], and state as follows:

**INTRODUCTION**

Plaintiff dedicates much of its Motion speculating about OpenAI's motives for removing this case to federal court. But Plaintiff largely ignores that the reason for removal is clear on the face of its complaint–Plaintiff's claims cite to, and are founded on, violations of a federal statute,

---

[1] In joining this Response to the Motion for Remand, Defendant Sam Altman is not making a general appearance in this matter and objects to and otherwise reserves the defense of lack of personal jurisdiction.

1

the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. § 6501 *et seq.*. As established in further detail below, federal jurisdiction is appropriate here because (1) Plaintiff's claim raises a federal question under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing* and (2) Plaintiff seeks federal relief which should be imposed by a federal court.

Not only was removal appropriate in this case, but Plaintiff's suggestion that it is entitled to attorney's fees because OpenAI is improperly litigating an "obvious" question should be rejected. Plaintiff's complaint explicitly cites to and relies on COPPA, which itself confirms why removal is proper and reasonable. Furthermore, Plaintiff does not cite to a single controlling case in the Eleventh Circuit that reaches its proposed holding on a COPPA removal. The handful of non-binding cases Plaintiff does cite in favor of remand explicitly declined to award fees to attorneys general because requesting removal was not "objectively unreasonable" even if the Court ultimately disagreed with the request for reasons distinguishable from the present action. *California v. TikTok Inc.*, No. 4:24-CV-07942-YGR, 2025 WL 683730, at *4 (N.D. Cal. Jan. 28, 2025).[2] Accordingly, the Motion to Remand should be denied in full, for the reasons stated herein.

## BACKGROUND

On June 1, 2026, Plaintiff filed the case captioned *Office of the Attorney General, State of Florida, Department of Legal Affairs v. OpenAI Global, LLC, et al.*, Case No. 26-000295-GC-AXMX in the Tenth Judicial Circuit for Highlands County, Florida. *See generally* Plaintiff's Complaint, [ECF No. 1-1], ("Compl."). Count IV of Plaintiff's Complaint ("Plaintiff's Claim") alleges a cause of action against OpenAI for violations of the Florida Deceptive and Unfair Trade

---

[2] *See also New Mexico ex rel. Torrez v. Meta Platforms, Inc.*, No. 1:23-CV-01115-MIS-KK, 2024 WL 413609, at *5 (D.N.M. Feb. 5, 2024) ("Here, the Court cannot find that removal was objectively unreasonable."); *Platkin v. Discord Inc.*, No. CV 25-5130 (JKS)(MAH), 2025 WL 3313014, at *10 (D.N.J. Sept. 10, 2025), *report and recommendation adopted*, No. CV 25-5130, 2026 WL 1091354 (D.N.J. Apr. 22, 2026) ("Although Discord did not carry its burden of establishing federal question jurisdiction, its arguments were substantial and clearly were rooted in caselaw applying the *Grable* factors.").

Practices Act ("FDUTPA"), the federal COPPA statute, and several implementing federal regulations. The last Defendant was served on June 18, 2026, and Defendants timely removed this action on July 2, 2026 pursuant to 28 U.S.C. § 1331. *See* Defendant's Notice of Removal, [ECF No. 1]. Plaintiff filed its Motion to Remand on July 10, 2026, [ECF No. 12], which OpenAI now opposes.

Plaintiff's Claim is predicated on federal law, warranting removal to this court. COPPA makes it unlawful for "an operator of a website or online service directed to children, or any operator that has actual knowledge that it is collecting personal information from a child, to collect personal information from a child in a manner that violates" COPPA's related regulations. 15 U.S.C. § 6502(a)(1). The statute defines a child as "an individual under the age of thirteen." § 6501(1).[3]  Here, Plaintiff alleges:

- "Defendants are 'operators' under COPPA because they operate an online service for commercial purposes and collect or maintain personal information from or about the users of said online service." Compl. ¶ 226.

- "Defendants fail to provide notice to parents about the information they collect from children and how they use such information in violation of [COPPA,] 16 C.F.R. §§ 312.4(b)—(c)." Compl. ¶ 230.

- "Defendants have failed and continue to fail to provide enough notice on their website about the information ChatGPT collects from children and how it uses such information in violation of [COPPA,] 16 C.F.R. § 312.4(d)." Compl. ¶ 232.

- "Defendants have failed and continue to fail to obtain verifiable parental consent before collecting or using children's personal information, in violation of [COPPA,] 16 C.F.R. § 312.5." Compl. ¶ 233.

- "Defendants' collection and use of data from Florida consumers under 13 years old, in violation of COPPA and its implementing regulations, is an unfair practice and a violation of FDUTPA by virtue of Section 501.203(3)." Compl. ¶ 234.

---

[3] Notably, OpenAI's terms and conditions state that ChatGPT is not intended for users under the age of thirteen.

- "Defendants have instituted [their] design despite obligations to the contrary, such as the Federal Trade Commission's COPPA Rule, 16 C.F.R. § 312.1 *et seq.*, which requires parental notification and consent before obtaining personal information from children." Compl. ¶ 74.

Despite alleging violations of and seeking interpretations of a federal statute, Plaintiff seeks to have a state court judge adjudicate whether the alleged conduct falls within the language of COPPA. In short, Plaintiff's application of COPPA is at the heart of this case. As discussed in further detail below, a federal district court should resolve these federal issues—and Plaintiff's Motion to Remand should be denied.

## LEGAL STANDARD

Under 28 U.S.C. § 1331, federal courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Whether a claim "arises under" federal law is governed by the "well-pleaded complaint rule," which provides that "federal jurisdiction exists only if a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.,* 535 U.S. 826, 831 (2002) (citation omitted). "The well-pleaded complaint rule means that a federal question is 'presented' when the complaint—on its face—invokes federal law as the basis for relief." *Schleider v. GVDB Operations, LLC*, 121 F.4th 149, 156 (11th Cir. 2024). Under this rule, "plaintiff [is] the master of the claim" and may "avoid federal jurisdiction by **exclusive** reliance on state law." *Caterpillar v. Williams*, 482 U.S. 386, 392 (1987) (emphasis added).

## ARGUMENT

### I.      Plaintiff's Claim Raises a Federal Question Under *Grable*.

Plaintiff's Claim creates a federal question under *Grable*. In *Grable*, the Supreme Court recognized that "in certain cases federal-question jurisdiction will lie over state-law claims that

implicate significant federal issues." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005). This doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law." *Id.* The *Grable* doctrine provides that even when a state court complaint pleads only state law causes of action "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258, 133 S.Ct. 1059, 185 L.Ed.2d 72 (2013).

Other federal courts correctly have rejected a state attorney general's attempt to avoid federal jurisdiction under the *Grable* test. For example, in *New York v. Arm or Ally, LLC*, the state attorney general brought a claim under a New York consumer protection statute that also required the state to prove that the defendant's products qualified as a firearm under federal law. 644 F. Supp. 3d 70, 75-76 (S.D.N.Y. 2022). Ultimately, the court denied remand under *Grable*, holding that the state "took the risk" of removal by choosing to "incorporate a federal definition into the relevant state law" rather than relying exclusively on state law. *Id.* at 81. The court also emphasized that the state's complaint "focuse[d] squarely and repeatedly" on the federal violation notwithstanding its state-law label—which only served to underline the "strong federal interests" in resolving the case. *Id.* at 82.

Similarly, the court in *State, ex rel Nixon v. Axces, Inc.,* denied a state attorney general's attempt to remand its state law claim when the "attorney general allege[d] that defendant violated FCC regulations." No. 98-0416-CV-W-2, 1998 WL 1034595, at *1 (W.D. Mo. Dec. 16, 1998). The court held that the state's inclusion of a FCC violation "leads to the conclusion that plaintiff's

right to relief necessarily depends on resolution of a substantial question of federal law." *Id.* The court also recognized that "practical considerations" militated towards federal jurisdiction because "inconsistent interpretation of these FCC regulations by attorneys general in the various states could result in a 'whipsaw' effect." *Id.* at *2.

Likewise, a state attorney general's motion to remand was denied when the state "expressly alleged that the [defendant's] duty arose pursuant to" a federal treaty. *New York v. Int'l Joint Comm'n*, 559 F. Supp. 3d 146, 154 (W.D.N.Y. 2021). The Court affirmed that "if state law claims are asserted based on a duty arising under federal law, a state-law claim necessarily raises a federal question." *Id.* at 153. Ultimately, because "the issue of whether the [defendant] owed a duty to the State and breached that duty necessarily turns on the interpretation of federal issues," federal jurisdiction was appropriate under *Grable*. *Id* at 154.

The same is true here. Like in *Arm or Ally, LLC* all four *Grable* elements are met in part because the state has "chosen to exercise its authority to regulate [] by piggybacking on federal law." 644 F. Supp. 3d at 83. For this reason, and the ones discussed in further detail below, the Court should deny the Motion to Remand under *Grable*.

### A.  Plaintiff's Claim Necessarily Raises A Federal Question.

The Complaint necessarily raises a federal question because the Court will need to interpret COPPA to determine whether it applies to the facts alleged here. *See Gunn*, 568 U.S. at 259 (finding a federal question was necessarily raised when resolution of the case "require[d] application of [federal] patent law to the facts. . . .").

To resolve Plaintiff's Claim, the Court will need to determine at least one key issue of federal law: whether Plaintiff has adequately alleged that OpenAI provided "online service[s] directed to" elementary-aged children or possessed actual knowledge of children's use of it. §

6502(a)(1). This is not "a factual matter that can be resolved without applying federal law" because the Court's interpretation of COPPA will resolve Plaintiff's Claim. *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1297 (11th Cir. 2008) (remanding a case when, unlike here, it could be resolved without applying federal law); *Norris v. Brady*, 668 F. Supp. 3d 1257, 1263 (S.D. Fla. 2023) (holding a federal question was necessarily raised when a plaintiff's claim required the Court to determine whether certain accounts were securities, "a question whose answer depends on the resolution of a substantial question of federal law."). Plaintiff's attempt to "disavow any intent to seek relief under federal law" does not prevent the Court from finding that the "Complaint necessarily raises a federal question." *Norris*, 668 F. Supp. 3d at 1263.

*Davis v. GMAC Mortg. LLC* is instructive here. There, the court found a federal question was "necessarily raised" when the plaintiff's breach of contract claim alleged the defendant violated a federal regulation. No. 4:11-CV-95 CDL, 2012 WL 860389, at *3 (M.D. Ga. Mar. 13, 2012). The court held that the "source of the contractual obligation that was allegedly breached is the federal regulation," and therefore "[a]djudicating Plaintiffs' breach of contract claims requires a determination of whether [defendant's conduct] violates [federal law]." *Id.*

Similarly, in *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A*, the Second Circuit affirmed the denial of a motion to remand when there could be "no disagreement" that a federal issue was necessarily raised because the plaintiff's claim "predicated liability" on the resolution of federal law. 824 F.3d 308, 317 (2d Cir. 2016). The court averred that "[a] state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law." *Id.* at 315 (citing *Grable*, 545 U.S. at 314). Ultimately, a federal question was "necessarily raised" when, for the plaintiff to succeed, he "must" prove that certain "trusts did not qualify under federal law" for tax exemptions as an essential part of his claim. *Id.* at 317.

Additionally, the present case is readily distinguishable from *TikTok Inc.*, 2025 WL 683730 and *Meta Platforms, Inc.*, 2024 WL 413609.[4] In *TikTok*, the Court found that a federal question was not necessarily raised because the relevant consumer protection count "focuse[d] on allegations of the design of allegedly harmful platform features and misrepresentations regarding those harms, **much of which appears to have minimal or no relation to COPPA**." *TikTok Inc.*, 2025 WL 683730, *3 (emphasis added).[5] The same is true in *Meta Platforms, Inc.* wherein the Court found that the state could prove its "claims through any of these practices by referring solely to New Mexico substantive law and without regard to any COPPA violations" and the operative complaint[6] alleged primarily conduct unrelated to COPPA in the disputed count. *Meta Platforms, Inc.*, 2024 WL 413609 *4. Accordingly, the disputed counts could be adjudicated without necessarily raising federal law.

Not so here. Count IV is premised *entirely* on COPPA-related conduct. *See* Compl. ¶¶ 219-40. Therefore, unlike in *TikTok Inc.*, 2025 WL 683730 and *Meta Platforms, Inc.*, 2024 WL 413609, a federal question is necessarily raised by Count IV.

### B. The Federal Question Is Necessarily Disputed.

The federal question is actually disputed here. Plaintiff maintains that OpenAI violated COPPA[7]; OpenAI contends it does not. Plaintiff also maintains that it properly brought its COPPA claim in a state court venue, despite COPPA itself clearly providing that Plaintiff should proceed in federal court. *See* supra Section I(D). This element is satisfied. *Norris*, 668 F. Supp. 3d at 1263

---

[4] *Discord Inc.*, 2025 WL 3313014 did not reach the question of whether a federal issue was necessarily raised.

[5] *The People of the State of California v. TikTok Inc. et al*, No. 4:24-cv-07942-YGR (N.D. Cal. 2024), [ECF No.1-2 at 80].

[6] *State of New Mexico, ex rel. v. Meta Platforms, Inc. et al*, No. 1:23-cv-01115-MIS-KK (D.N.M 2023), [ECF No. 1-2].

[7] Indeed, OpenAI's terms and conditions provide that ChatGPT is not intended for users under the age of thirteen.

("[T]his factor is satisfied because the Parties dispute whether the YBAs are securities under federal law.").

### C.  The Federal Question Is Substantial.

The federal question presented here is substantial because it is a pure question of law that could impact other cases between other parties. "The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. The Supreme Court has identified several factors to help in this analysis. *Norris*, 668 F. Supp. 3d at 1264 (citing *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700–01, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006)). "These guideposts are more likely to make a federal question substantial: (1) pure questions of law; (2) questions that will control in other cases; and (3) questions in which the government has a strong interest to litigate in federal court." *Id.* The federal government has a strong interest in having federal courts interpret COPPA—a statute that provides nationwide requirements for online services directed at children and expressly contemplates federal enforcement by the FTC.

That federal courts have a strong interest in interpreting and resolving COPPA claims is evident from the statute itself. As further detailed in Section I(D), Congress explicitly envisioned state AGs enforcing COPPA in a federal cause of action in federal court. *See* 15 U.S.C. § 6504(a)(1) ("In ***any case*** in which the [AG] of a State has reason to believe that an interest of the residents of that State has been or is threatened or adversely affected by the engagement of any person in a practice that violates any regulation of the [Federal Trade] Commission prescribed under section 6502(b) of this title, the State, as *parens patriae*, may bring a civil action on behalf of the residents of the State **in a district court of the United States** of appropriate jurisdiction to [obtain relief].") (emphasis added).

9

Accordingly, the federal question raised by Plaintiff's Complaint is substantial under *Grable*.

### D. A Federal Court Answering a Federal Question Does Not Upset the State/Federal Balance.

A federal court deciding this federal issue would not disturb any balance between state and federal courts because the statute explicitly contemplates federal courts as the appropriate venue for these claims. *See* § 6504. Indeed, COPPA's own text and structure limits the enforcement authority of state AGs to discrete categories of pre-litigation activity, none of which entail the filing of an enforcement action in state court as Plaintiff sought to do here.

In Section 6504(c), Congress prescribes authority for state AGs to conduct prelitigation COPPA-related investigations and utilize state court enforcement mechanisms only in support of those prelitigation investigation efforts. As made clear in the plain text of the statute, Congress declined to "prevent an attorney general of a State from exercising the powers . . . to conduct investigations; administer oaths or affirmations; or compel the attendance of witnesses or the production of documentary evidence." 15 U.S.C. § 6504(c). Litigating this case in federal court does not upset the federal balance because, had Congress intended state AGs to initiate COPPA-related enforcement actions of this nature only in state court, there would be no need to reserve such prelitigation authority for state court involvement in assisting the investigation process, *e.g.*, compelling production of documents in response to an investigatory inquiry. *See Savage Servs. Corp. v. United States,* 25 F.4th 925, 936 (11th Cir. 2022) ("*Expressio unius* instructs that, where a statute designates a form of conduct, the manner of its performance and operation, and the persons and things to which it refers, courts should infer that all omissions were intentional exclusions."). Instead, the clear structure of COPPA is to permit state AGs to investigate COPPA related issues and utilize their own state courts to assist in that process, but once the decision is

10

made to litigate COPPA issues or claims, the statute contemplates such actions being brought and litigated in federal court.

Additionally, far from upsetting any state and federal balance, litigating this case before this Court would "permit a federal court to decide the federal issue Plaintiffs themselves raised." *Norris*, 668 F. Supp. 3d at 1264. The real federalism concern here is a sovereign *state enforcement action* where the chief law enforcement officer has elected to bring a federal enforcement action cloaked as a state law action and without proceeding in accordance with the enforcement mechanism that COPPA provides for state attorneys general.[8]

Accordingly, the elements of the *Grable* test are satisfied and the Motion to Remand should be denied on these grounds alone.

## II.        Plaintiff's Claim "Really" is a Federal Claim.

Not only does a state law claim arise under federal law where "some substantial disputed question of federal law is a necessary element of one of" the claims as established above, but also where a "claim is 'really' one of federal law." *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 13 (1983).  Count IV is both. As pled, the state's FDUTPA claim not only incorporates federal law as an element for liability, but the claim itself is "really" one of federal law because it attaches FDUTPA consequences to one source of law, and one source alone: COPPA and its implementing Rule. Compl. ¶¶ 221–33. That Count IV is one claim among ten changes nothing, for "the test for federal question jurisdiction does not ask if a federal claim is a 'core' part of the complaint, or 'secondary' to another claim, or an 'incidental' part of the dispute." *Jones v. I.Q. Data Int'l, Inc.,* No. 6:24-CV-712-PGB-RMN, 2024 WL

---

[8] Plaintiff raises federalism concerns because, as the state attorney general, he brought this enforcement action in state court.  But he chose to invoke federal law as the basis of his Count IV allegation and invite a federal court to adjudicate the claim. That tactical and discretionary decision is dispositive.

11

3757868, at *2 (M.D. Fla. June 25, 2024), *report and recommendation adopted*, No. 6:24-CV-712-PGB-RMN, 2024 WL 3757814 (M.D. Fla. July 16, 2024).

### a. Plaintiff Seeks Federal Relief.

Plaintiff's Prayer for Relief tracks nearly word-for-word COPPA's implementing regulation and therefore "invokes federal law as the basis for relief." *See Schleider*, 121 F.4th at 156 (holding that a federal question is "presented when the complaint—on its face—invokes federal law as the basis for relief.") (emphasis added). Although Plaintiff now claims that it "seeks no relief under [COPPA] or any other federal statute," Mot. at 6 n.2, the plain text of its pleading says otherwise.

In its Complaint, Plaintiff asked the Court to enjoin OpenAI from collecting data from pre-teen youth without first:

> 1) providing written notice of what information they collect from children, how they use such information, and their disclosure practices for such information; (2) obtaining verifiable parental consent for the collection, use, or disclosure of personal information from children; (3) providing reasonable means for a parent to review the personal information collected from children and to refuse to permit its further use or maintenance; (4) removing any condition of a child's use of ChatGPT on the child disclosing more personal information than is reasonably necessary to participate in such activity; and (5) establishing and maintaining reasonable procedures to protect the confidentiality, security, and integrity of personal information collected from children.

Compl. at 81. Crucially, none of the conduct Plaintiff seeks to enjoin is prohibited independently by FDUTPA—or any other Florida law that would be applicable to OpenAI. Tellingly, that precise list of conditions, however, is provided for, nearly word-for-word, in COPPA's implementing regulation:

> (a) Provide notice on the website or online service of what information it collects from children, how it uses such information, and its disclosure practices for such information; (b) Obtain verifiable parental consent prior to any collection, use, and/or disclosure of personal information from children; (c) Provide a reasonable means for a parent to review the personal information collected from a child and to refuse to permit its further use or maintenance; (d) Not condition a child's

> participation in a game, the offering of a prize, or another activity on the child disclosing more personal information than is reasonably necessary to participate in such activity; and (e) Establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of personal information collected from children.

*See* 16 C.F.R. § 312.3 (internal citations omitted).

The overlap is not approximate. Paragraph E restates the Rule's five obligations in order, and the only substantive edit is the substitution of "use of ChatGPT" for the Rule's "participation in a game, the offering of a prize, or another activity." *Compare* Compl., Prayer for Relief ¶ E, at 81, *with* 16 C.F.R. § 312.3(d). Indeed, Paragraph E retains the Rule's residual phrase "to participate in such activity" even after excising its antecedent—a drafting seam left by the copying itself. And the decree's pivotal term—"verifiable parental consent"—is supplied by no Florida statute Plaintiff invokes. It is a federal term of art, defined at 15 U.S.C. § 6501(9), the definition of which the Complaint quotes in full. Compl. ¶ 225.

Plaintiff cannot disavow COPPA in its allegations, Compl. ¶¶ 30, 234, while demanding COPPA compliance in its Prayer. Because no Florida law pleaded in the Complaint independently imposes these obligations, the injunction Plaintiff requests is COPPA enforcement, however labeled: its commands would be drawn from federal law, and Defendants' compliance—or contempt—could be measured only by construing COPPA and the Commission's Rule. *Roman v. Hooters Spring Hill, Inc.*, No. 8:16-cv-01332-T-24MAP, 2016 WL 8997452 (M.D. Fla. July 8, 2016), is instructive. There, the plaintiff pleaded her counts exclusively under the Florida Minimum Wage Act and the Florida Constitution, yet her prayer demanded declaratory relief, liquidated damages, interest, and fees under the FLSA. *Id.* at *1. The court denied remand because the plaintiff "plainly ask[ed] the Court to grant her multiple forms of relief under the FLSA, which requires the Court to interpret and apply those federal statutes." *Id.* at *2. Nor could state law

13

silently supply the demanded relief: the FLSA provision "through which Plaintiff demand[ed] relief" was not among those the Florida Legislature had incorporated into the State's wage laws. *Id.* So too here: FDUTPA nowhere prescribes parental notice, verifiable parental consent, rights of parental review and refusal, data minimization, or children's data-security procedures. The only distinction from *Roman* is the *Roman* plaintiff named the federal statute in her prayer, while Plaintiff copied the federal text and deleted the citation.

Under well-established doctrine, Plaintiff's tactical decision to omit citation to 16 C.F.R. § 312.3 when crafting its requested relief cannot salvage an attempt at remand. *See Deroy v. Carnival Corp.,* 963 F.3d 1302, 1310 n.11 (11th Cir. 2020) ("According to the artful-pleading doctrine, a plaintiff who files suit in state court may not defeat removal simply by 'omitting to plead necessary federal questions.'"); *Norris*, 668 F. Supp. 3d at 1261-63 (finding that plaintiff "pursue[d] relief under federal law," despite "[e]ach claim [being] styled as requesting relief under Florida state law."). Indeed, "[i]f Plaintiff wanted to seek relief under only Florida law, [it], as the masters of the Complaint, could have eschewed pursuing relief under federal law. [It] did not." *Id*. at 1263. Accordingly, Plaintiff's Motion to Remand should be denied on this basis alone.

**b.  Plaintiff's Claim Ultimately Alleges a Violation of Federal Law.**

In addition to seeking COPPA-based injunctive relief, Plaintiff's Claim is ultimately one of federal law. *See Franchise Tax Bd. of State of Cal.*, 463 U.S. at 13. While Plaintiff's Claim is labeled a FDUTPA claim, it is predicated wholly on a federal cause of action under COPPA. *See* Compl. ¶ 226 (alleging "Defendants are 'operators' under COPPA"); ¶ 230 (alleging that "Defendants fail to provide notice to parents … in violation of [COPPA,] 16 C.F.R. §§ 312.4(b)—(c).); Compl. ¶ 232 (alleging "Defendants have failed and continue to fail to provide enough notice on their website . . . in violation of [COPPA,] 16 C.F.R. § 312.4(d)."); Compl. ¶ 233 (alleging "Defendants have failed and continue to fail to obtain verifiable parental consent . . .  in violation

of [COPPA,] 16 C.F.R. § 312.5."); Compl. ¶ 234. Artful labeling will not avoid this obvious conclusion. *See San Antonio v. Henry*, No. 3:13CV528/RV/CJK, 2013 WL 6184055, at *6 (N.D. Fla. Nov. 25, 2013) (denying a motion to remand a one-count negligence complaint finding that plaintiff's argument that the claim was based on the Florida Tort Claim Act did "not mean that plaintiff's case is a state cause of action" when "federal law creates at least a portion of plaintiff's claims.").

Further, construing Plaintiff's Claim as though it does not raise a federal question "would render [the federal statute] virtually a dead letter." *Brennan v. Sw. Airlines Co.,* 134 F.3d 1405, 1410 (9th Cir. 1998). Any state AG could evade Section 6504's strictures by recasting alleged COPPA violations as state law violations, as Plaintiff has done with FDUTPA. This tactic deprives the FTC of the required notice and the right to intervene in a state AG action raising alleged COPPA violations. And it circumvents Section 6504(d)'s bar on state AG actions in any case against a defendant already subject to suit by the FTC for alleged COPPA violations. Congress's enforcement scheme works only if Section 6504 is the appropriate venue for state AGs to pursue alleged violations of COPPA.

### III.    Fees Are Not Warranted here.

Plaintiff's demand for fees is ill-founded. For fees to be appropriate, there cannot be any "objectively reasonable basis" for removal. *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). Plaintiff's disagreement with OpenAI's two separate bases for removal do not render them objectively unreasonable—particularly when, as here, Plaintiff elected to invoke COPPA instead of proceeding only under state law as it does in Counts I-III of the Complaint. As discussed above, Plaintiff's Claim in Count IV is predicated wholly on COPPA, Compl. ¶¶ 226-233, and seeks relief

15

essentially transcribed from COPPA. *Compare* Compl., Prayer for Relief ¶ E, at 81, *with* 16 C.F.R. § 312.3(d).

Indeed, Plaintiff could not cite a single Eleventh Circuit case addressing removal of a claim invoking COPPA violations. Far from objectively unreasonable arguments, these appear to be issues of first impression in the Eleventh Circuit.

Moreover, the out-of-circuit cases Plaintiff cites in support of remand, *declined to award fees* because those judges, in those circuits, found that the arguments raised were not objectively unreasonable. *See TikTok Inc.*, 2025 WL 683730, at *4 ("While the Court rules in favor of remand, defendants' basis for removal was not so objectively unreasonable. The Court declines to award fees to the State."); *Discord Inc.*, 2025 WL 3313014, at *10 ("Although Discord did not carry its burden of establishing federal question jurisdiction, its arguments were substantial and clearly were rooted in caselaw applying the *Grable* factors."); *Meta Platforms, Inc.*, 2024 WL 413609, at *5 ("Although the Court finds that there is no federal subject matter jurisdiction in this case, it declines to award the State attorneys' fees and costs.").

Plaintiff's request for fees should be quickly and summarily denied.

Dated: July 24, 2026                          Respectfully submitted,

/s:/ *Gregor J. Schwinghammer, Jr.*
Gregor J. Schwinghammer, Jr, Esq.
Florida Bar No. 90158
GUNSTER, YOAKLEY & STEWART, P.A.
777 S. Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: (561) 655-1980
Facsimile: (561) 655-5677
Primary Email:
gschwinghammer@gunster.com
Secondary Email: jfirogenis@gunster.com

/s:/  *Bradley J. Bondi, Esq.*
Bradley J. Bondi, Esq.
Florida Bar No. 162396
PAUL HASTINGS LLP
2050 M Street, N.W.
Washington, D.C. 20036
Telephone: (202) 551-1701
Facsimile: (202) 551-0201
Primary E-mail: bradbondi@paulhastings.com
Secondary E-mail: EA-ondi@paulhastings.com

George S. LeMieux, Esq.
Florida Bar No. 016403
GUNSTER, YOAKLEY & STEWART, P.A
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Telephone: (954) 462-2000
Facsimile: (954) 523-1722
Primary E-mail: glemieux@gunster.com
Secondary E-Mail: rbelons@gunster.com

Joseph W. Jacquot
Florida Bar No. 189715
GUNSTER, YOAKLEY & STEWART, P.A.
1 Independent Drive, Suite 2300
Jacksonville, Florida 32202
Telephone: (904) 354-1980
Facsimile: (904) 354-2170
Primary E-mail:     jjacquot@gunster.com
Secondary E-mail: wpruim@gunster.com

Monique Zapata, Esq.
Florida Bar No. 1025828
GUNSTER, YOAKLEY & STEWART, P.A.
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Telephone: (954) 462-2000
Facsimile: (954) 523-1722
Primary E-mail: mzapata@gunster.com
Secondary E-Mail: shely@gunster.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document is being served on July 24, 2026, via

automatic email generated by the filing system CM/ECF to all counsel of record.

*/s:/ Gregor J. Schwinghammer, Jr.*
Gregor J. Schwinghammer, Jr., Esq.